# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WALTER ALLBRITTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1834** |
| **TANGIPAHOA PARISH JAIL, ET AL.** | **SECTION "T"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.   Factual Background

Plaintiff Walter Allbritton ("Allbritton") is an inmate currently housed in the Tangipahoa Parish Jail ("TPJ") in Amite, Louisiana.[1] Allbritton filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants TPJ, Tangipahoa Parish Sheriff Daniel Edwards, and Tangipahoa Parish President Robbie Miller challenging the conditions of his confinement.[2]

Allbritton alleges that the conditions at TPJ are "bad & unsanitary" with mold and insects throughout the jail.[3] Allbritton recognizes that jail officials have bleached the mold trying to get rid of it, but he alleges that it returns from inside the walls when it rains because, he claims, the roof leaks.[4]

---

[1] ECF No. 5, ¶II(A), at 2.
[2] *Id.*, ¶III(B), at 3.
[3] *Id.* at ¶IV.
[4] *Id.* at 4.

Allbritton further claims that the officials are sending inmates into the jail with no mats, tissue, or soap and with one change of clothing.[5] He alleges that there are gnats everywhere and that inmates are coming down with boils on their bodies.

Allbritton also claims that he has been sleeping on a mat with no cover on it. He alleges that he has no way to clean it so "bed bugs are here."[6] As relief, Allbritton seeks $5 million as compensation for his having lived like this for three years.[7]

## II.     Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v.*

---

[5] *Id*. at 3.
[6] *Id*.
[7] *Id*., ¶V, at 4.

*Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. Analysis

#### A. Tangipahoa Parish Jail

Allbritton has named TPJ as a defendant, but it is not a proper defendant. A plaintiff bringing a § 1983 complaint is required to identify both a constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). The TPJ, however, is not recognized as a "person" within the meaning of § 1983. *See Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. Jun. 9, 2008) (Order adopting attached Report and Recommendation).

In Louisiana, a jail facility is not an entity "legally empowered to do" anything independent of either parish officials or the parish sheriff. *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994). Because a jail is not a juridical entity under state law, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 . . ." and jails "are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp. 2d at 892; *see* Fed. R. Civ. Proc. 17(b). As one division of this Court has noted, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. May 8, 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *1 (E.D. La. Aug. 10, 2015).

Consequently, the claims against TPJ should be dismissed under 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### B. Sheriff Daniel Edwards

Allbritton names Sheriff Edwards as a defendant but has not alleged any basis, action, or inaction on which to hold the Sheriff liable under § 1983. As noted above, to recover under § 1983, Allbritton must identify the constitutional violation for which a defendant is allegedly responsible. *Flagg Bros., Inc.*, 436 U.S. at 156. Also, proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability under §1983. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Thus, supervisory officials, like Sheriff Edwards, cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act. *Douthit*, 641 F.2d at 346.

In this case, Allbritton does not allege that Sheriff Edwards was personally involved in or aware of any alleged violation of his constitutional rights or that he personally advised the Sheriff of any unconstitutional condition to which he was personally exposed. Allbritton also has not alleged that he has suffered any injury directly resulting from any order, training, or other unconstitutional policy implemented by Sheriff Edwards to state a basis for vicarious liability under § 1983 in a supervisory role. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Thus,

to the extent Allbritton included the Sheriff as defendant because of his supervisory role at the jail, this is not an appropriate basis to impose liability under § 1983.

Allbritton has not alleged a personal action or connection that would render Sheriff Edwards liable under § 1983 or liable for the actions or inactions of other subordinate prison personnel. For these reasons, Allbritton's claims against the Sheriff as a supervisor over the jail should be dismissed under § 1915 and § 1915A as frivolous and otherwise fail to state a claim for which relief can be granted.

### C. Parish President Robbie Miller

Allbritton named Parish President Miller as a defendant but has not alleged any basis to hold him liable for his claims or any particular action or inaction on his part as president of the local governing body. In Louisiana, the Parish government, including its President, has no authority over the general management of the jail or the prisoners in it. *See Jones*, 4 F. Supp. 2d at 613. Instead, under Louisiana law, the Parish government is only responsible for the financing and physical maintenance of the structural jail building.[8] Thus, "[s]imply put, local governments can never be liable under Section 1983 for the acts of those whom the local government has no authority to control." *Cousin v. St. Tammany Parish Jail*, No. 14-1514, 2015 WL 5017113, at 3 (E.D. La. Aug. 19, 2015) (citing *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996), *cert. denied*, 520 U.S. 781 (1997)).

For these reasons, plaintiff has alleged no legal basis to assert a claim against President Miller who has no legal responsibility over the day-to-day concerns at TPJ. Plaintiffs' claims

---

[8] *See* La. Stat. Ann. § 15:304 ("All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."); La. Stat. Ann. § 15:702 ("The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."); La. Stat. Ann. § 33:4715 ("The police jury of each parish shall provide . . . a good and sufficient jail . . .")

5

against President Miller are frivolous and otherwise fail to state a claim for which relief can be granted under § 1983. The claims against President Miller should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A.

### D. Conditions of Confinement

Allbritton includes generalized references to certain unsanitary conditions at the TPJ, including the recurring presence of mold and his inability to clean his sleeping mat that has no cover, which causes him concerns about potential bed bugs. He also alleges other general references to conditions impacting other inmates, such as insufficient bedding and clothing provisions and boils appearing on other inmates purportedly from gnats. With regard to the latter claims, Allbritton lacks standing to assert claims addressing the constitutional rights of other inmates. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (litigants must prove a constitutional violation of their personal rights and not the rights of others); *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011). Thus, as an initial matter, to the extent Allbritton asserts that the conditions at TPJ violate constitutional rights of other inmates, he has failed to state a claim upon which relief may be granted.

With regard to the claims specific to Allbritton, as a pretrial detainee, in addressing this type of challenge to the conditions of his confinement, it is a basic premise that prison officials cannot use conditions to punish a pre-trial detainee. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The proper inquiry is whether the complained of conditions amount to punishment of the detainee. *Bell*, 441 U.S. at 535. "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 640 (5th Cir. 1996). To determine whether a condition of detention amounts to punishment, the Court must consider whether the condition is imposed for the purpose of

punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538. However, for all detainees, "'[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Id.* at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones." *Harper*, 74 F.3d at 719 (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

Aware of the uncomfortable setting Allbritton describes, the Court concludes that he has failed to allege a constitutional violation with respect to his claims of unsanitary conditions in the jail. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain problems endemic to large institutions such as rust, dust, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *R&R adopted by* 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *R&R adopted by* 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). It is also quite significant that Allbritton admits that TPJ officials have attempted to remediate the alleged mold on the walls, albeit unsuccessfully in Allbritton's point of view. Nevertheless, general unsanitary conditions, even the presence of mold and dampness in a

prison setting, does not render an inmate's confinement unconstitutional. *See, e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *R&R adopted by* 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Furthermore, the Constitution does not require that an inmate be provided with an elevated bed. *See Gaines v. McDonald*, 577 F. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Conlin v. Thaler*, 347 F. App'x 983, 984 (5th Cir. 2009) (inmate's claim that his sleeping mat is uncomfortable does not allege a constitutional violation); *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986) (pretrial detainees do not have a constitutional right to an elevated bed). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004).

Thus, Allbritton's conclusory allegations about mold and uncomfortable conditions fail to establish a constitutional violation or that the conditions amounted to punishment. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water

8

fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitary living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. 1996); *accord Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010); *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

Finally, Allbritton's complaint seeks compensatory damages for having lived in the conditions about which he complains. He does not allege that he personally has suffered any physical injury resulting from the alleged conditions of his confinement. Under the Prison Litigation Reform Act of 1996 ("PLRA"), ""[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Absent any physical injury, or more than a *de minimis* physical injury, a plaintiff cannot recover compensatory damages in a conditions-of-confinement case. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."). Thus, under the PLRA, Allbritton's failure to allege a physical injury in connection with the conditions of his confinement justifies dismissal of his request for compensatory damages. *See Higgins v. Navarrete*, No. 20-20341, 2022 WL 543018, at *3 (5th Cir. 2022) (affirming district court's grant of summary judgment on the basis that the plaintiff failed to allege a physical injury as required by the PLRA to recover monetary damages); *see also Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003) (affirming dismissal of

prisoners' conditions-of-confinement claims under the PLRA where they alleged either no or only *de minimis* physical injury).

For the foregoing reasons, Allbritton's conditions-of-confinement claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason pursuant to 28 U.S.C. § 1915, § 1915A, and as applicable, 42 U.S.C. § 1997e.

### IV. Recommendation

It is therefore **RECOMMENDED** that Allbritton's § 1983 claims against defendants Tangipahoa Parish Jail, Sheriff Daniel Edwards, and Parish President Robbie Miller be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and as applicable 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[9]

New Orleans, Louisiana, this 14th day of May, 2024.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[9]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.